# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

KEVIN J. HODGE,

       Petitioner,

v.

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et. al.,

       Respondents.

Case No. 3:15-cv-1425-J-32PDB

_____

## ORDER

### I.  Status

       Petitioner, Kevin J. Hodge, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1) on November 9, 2015.[1] Hodge is proceeding on an Amended Petition filed on May 6, 2016. See Doc. 9. Hodge challenges a state court (Duval County, Florida) judgment of conviction for attempted carjacking for which he is currently serving a fifteen-year sentence. Doc. 9 at 1. Respondents filed a Response on March 8, 2017. See Doc. 19 (Resp.).[2] Hodge declined to file a reply. See Doc. 20. This case is ripe for review.

---

     [1] Giving Hodge the benefit of the mailbox rule, the Court finds that his pleadings were filed on the respective dates Hodge handed them to prison authorities for mailing to the Court.  See Houston v. Lack, 487 U.S. 266, 276 (1988).

     [2] Attached to the Response are several exhibits.  The Court cites to the exhibits as "Resp. Ex."

## II.     Governing Legal Principals

### A. Standard Under AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

_____

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

**B. Exhaustion and Procedural Default**

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Pope v. Rich, 358 F.3d 852, 854 (11th Cir. 2004) (noting "that Boerckel applies to the state collateral review process as well as the direct appeal process.").

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the ""opportunity to pass upon and correct" alleged violations of its prisoners' federal rights."' Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

4

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).

[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

show either (1) cause for and actual prejudice from the default; or (2) a fundamental

miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for

a petitioner to establish cause and prejudice,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[5] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id.</u> at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive

consideration on the merits of a procedurally defaulted claim if the petitioner can

establish that a fundamental miscarriage of justice, the continued incarceration of one

who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

---

[5] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

### C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward v. Hall, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part Strickland test must be satisfied to show a Sixth

Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, 562 U.S. at 105. As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" Daniel v. Comm'r, Ala. Dep't of Corr., 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting Strickland, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." Id. (citing Richter, 562 U.S. at 105); see also Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316, 1333-35 (11th Cir. 2013) (en banc) (Jordan, J., concurring); Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004).

III. **Analysis**

**A. Ground One**

Hodge contends that the evidence presented at trial was insufficient to satisfy the second element of carjacking.[6] Doc. 9 at 4-5. According to Hodge, the state failed to present evidence that the attempted taking occurred with "force, violence, assault, or putting in fear." Id. at 4. Thus, Hodge contends that his conviction amounted to a denial of due process. Id.

Hodge, through appellate counsel, raised this issue on direct appeal as a claim of fundamental error. Resp. Ex. 4 at 7. Respondents, however, submit that Hodge failed to present this claim as a federal constitutional claim to the state appellate court, rendering it unexhausted and procedurally defaulted. See Resp. at 15. Respondents further assert that this claim is otherwise without merit. Id. at 25-30.

The Court agrees with Respondents' exhaustion argument. A review of Hodge's initial brief reveals that when briefing this issue, Hodge did not state or suggest that it was a federal claim about due process or any other federal constitutional guarantee. Resp. Ex. 4 at 7-13. Instead, Hodge argued, in terms of state law only, that the evidence did not satisfy the elements of section 812.133, Florida Statutes; thus, he claimed he was convicted of a crime that did not occur, resulting in fundamental error. Resp. Ex. 4 at 7-13. Further, in briefing this issue, Hodge cited solely to state cases, none of which were decided on federal grounds. Id.

---

[6] Initially, Hodge erroneously states he was convicted of attempted "kidnapping." See Doc. 9 at 4.

While Florida courts assess sufficiency of the evidence using the standard outlined in Jackson v. Virginia, 443 U.S. 307, 319 (1979), the basis of Hodge's argument was that there was no evidence that the victim was in reasonable fear, as defined under Florida's statute for carjacking. See Pearson v. Sec'y Dept. of Corr., 273 F. App'x 847, 849 (11th Cir. 2008) (finding the petitioner's claim regarding the sufficiency of the evidence supporting the fear element of his carjacking conviction did not put the state court on notice of his federal habeas claim). Consequently, the First District Court of Appeal was never notified of a federal constitutional claim during Hodge's direct appeal, and presumably, the First DCA exclusively applied state law in affirming the conviction. See id.; see also Preston v. Sec'y Dept. of Corr., 785 F.3d 449, 461 (11th Cir. 2015) ("We can safely assume that when the Florida [appellate court] considered [petitioner's] appeal, it did so through the prism of this longstanding state doctrine, rather than federal law."). As such, Ground One is unexhausted and procedurally defaulted. Hodge has failed to show either cause and prejudice from the default, or that a fundamental miscarriage of justice will result if the claim is not addressed on the merits. Therefore, he is not entitled to federal review of this claim.

Nevertheless, even if this claim was not procedurally barred, it would fail on the merits. When reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319. The court

must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. Id.

Here, the jury found Hodge guilty of attempted carjacking as charged in the Information. Resp. Ex. 1 at 8, 24. Carjacking is defined as "the taking of a motor vehicle . . . from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the motor vehicle, when in the course of the taking there is the use of force, violence, assault or putting in fear." § 812.133(1), Fla. Stat. (2011). A person attempts to commit a carjacking when the individual "does any act toward the commission of such [carjacking], but fails in the perpetration or is intercepted or prevented in the execution thereof . . . ." § 777.04(1), Fla. Stat. (2011).

At trial, the victim testified that she was loading groceries into her vehicle when she noticed a strange man behind her with his arms outstretched. Resp. Ex. 3 at 108-09. She stated that she immediately backed away, explaining that the man's presence startled and frightened her because she did not know his intention. Id. at 109-10. She testified that the man was holding a "flat, black object," similar to a cell phone, in his hand and that the man shook the object in her direction as he spoke. Id. She explained that the man made multiple verbal demands that she give him her car keys. Id. at 110-11. The victim testified that every time the man made his demand, he aggressively "jabbed" his handheld object in her direction. Id. After each "jab" and demand, the victim took a step backwards. Id. The victim testified that she eventually yelled "No" before running back into the store. Id. at 110-12. Both before trial and during trial,

the victim identified Hodge as the individual who committed the offense. Id. at 111-13.

Officer Claude Douglas Freeman also testified that upon initial contact with Hodge, and without officer-initiated questioning, Hodge spontaneously and voluntarily said, "I know what this is about. It's about that black lady and her car. I didn't want to hurt her, I just wanted her car." Id. at 154. Taken in the light most favorable to the state, the Court finds there was sufficient evidence to permit a rational trier of fact to find Hodge guilty of attempted carjacking. Accordingly, Ground One is denied.

**b. Ground Two**

Ground Two consists of seven sub-claims of ineffective assistance of trial counsel. See Doc. 9 at 5-7. The Court addresses each sub-claim in turn.

*i. Sub-Claim A*

Hodge avers that trial counsel was ineffective for failing to file a motion to suppress his involuntary pretrial statements made to Officer Freeman. Doc. 9 at 5. According to Hodge, the statements were made in violation of his Miranda[7] rights. Id.

Hodge raised this claim in his Florida Rule of Criminal Procedure 3.850 motion for postconviction relief. Resp. Ex. 9 at 4-6. In addressing this issue, the trial court noted that "Miranda is applicable where a suspect is taken into custody and interrogated." Resp. Ex. 9 at 19-20 (citing State v. Binion, 637 So. 2d 952, 952 (Fla.

---

[7] Miranda v. Arizona, 384 U.S. 436 (1966).

4th DCA 1994) (citation omitted).  The trial court ultimately denied the claim, finding

in pertinent part:

> In the instant case, the Arrest and Booking Report shows that Officer Freeman observed Defendant walking down the street, and stopped Defendant because he matched the description of the attempted carjacking suspect. Thus, the face of said Report indicates that Defendant was not "in-custody" for purposes of <u>Miranda</u>. Further, Defendant spontaneously made the statement in question while he freely spoke to Officer Freeman. Moreover, Officer Claude Douglas Freeman testified during trial. He testified that, following the victim's 911 call containing her description of the suspect, he came in contact with Defendant walking on the road, who matched the description of the suspect. Officer Freeman described his interaction with Defendant in detail: he exchanged in a consensual greeting with Defendant, told Defendant he wanted to speak with him, asked Defendant for his identification, asked Defendant if he had any weapons on his person and if he could search Defendant, and, before Officer Freeman could search Defendant, Defendant stated, "I know what this is about, It's about that black lady and her car. I didn't want to hurt her, I just wanted her car." Officer Freeman identified Defendant in-court as the individual who made the aforementioned statement to him. During cross-examination, Officer Freeman classified the statement as a "spontaneous statement" and, following the statement, he did not ask Defendant any questions about it before he placed Defendant in his police car.
>
> This Court finds the testimony adduced at trial demonstrates Defendant was not yet in-custody or being interrogated at the time he made the statement at issue. As such, the protections of <u>Miranda</u> were not triggered as applied to Defendant's exchange with Officer Freeman on the street. Further based on Officer Freeman's testimony, this Court finds Defendant's statement at issue was made as a spontaneous remark, which was not made in response to any question posed by the Officer. Therefore, because Defendant volunteered the statement to Officer Freeman, this Court finds <u>Miranda</u> does not apply to it. <u>See</u> <u>Kelly [v. State</u>, 486 So. 2d 578, 584 (Fla. 1986)]. Accordingly, the

> statement at issue would not have been properly suppressed on grounds that Defendant's <u>Miranda</u> rights were violated, and counsel was not ineffective for failing to file a non-meritorious motion to suppress it. <u>See</u> <u>Branch v. State</u>, 952 So. 2d 470, 476 (Fla. 2006) (finding counsel cannot be ineffective for failing to file motion which would have been properly denied). Based on the foregoing, therefore, Ground One is denied.

Resp. Ex. 9 at 19-20 (record citations omitted). The First DCA <u>per</u> <u>curiam</u> affirmed the trial court's denial without a written opinion. Resp. Ex. 12.

To the extent that the First DCA affirmed the trial court's denial on the merits,[8] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Here, Hodge was not subject to express questioning or the functional equivalent of questioning when he made his incriminating statement. As such, Hodge's Miranda rights were not violated. <u>See</u> <u>United States v. Young</u>, 377 F. App'x 965, 969 (11th Cir. 2010); <u>Cannady v. Dugger</u>, 931 F.2d 752, 754 (11th Cir. 1991) (holding that "[v]oluntary and spontaneous comments by an accused . . . are admissible

---

[8] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

evidence if the comments were not made in response to government questioning."). Thus, his counsel was not ineffective for failing to raise this issue. This claim is denied.

### ii. Sub-Claim B

Hodge contends that his trial counsel was ineffective for failing to impeach the victim's trial testimony with her prior inconsistent description of the assailant. Doc. 9 at 5. Hodge claims that his trial counsel attempted to impeach the victim, but when the trial court sustained the state's objection, trial counsel abandoned any attempt and was, thus, ineffective. Id.

Hodge raised this claim in his Rule 3.850 motion. Resp. Ex. 9 at 6-7. The trial court summarily denied the claim, noting that Hodge's rendition of trial counsel's performance was a misstatement. Id. at 21. The trial court found that trial counsel questioned the victim about her pretrial description of the perpetrator as being a "young, white male, with blond hair, wearing khaki shorts a white t-shirt, and white tennis shoes." Id. at 21-22. Trial counsel further attempted to challenge the victim's credibility by questioning her about the duration of her interaction with the perpetrator and that she identified Hodge as the perpetrator while he was seated in the backseat of the police vehicle and without seeing the lower half of his body. Id. The trial court noted that trial counsel also questioned Officer Russ Ashenfelder about the victim's pretrial identification of Hodge, and that trial counsel called Hodge's brother, Ryan Hodge, as a witness at trial. Id. at 22-23. Ryan Hodge testified that Hodge was wearing black Nike shoes and dark colored shorts on the day of the crime. Id. at 23.

Considering the record evidence, the trial court made the following findings:

Based on the forgoing, this Court finds counsel's aforementioned questioning of the victim during cross-examination, as well as counsel's questioning of Officer Ashenfelder and Mr. Ryan Hodge, cast doubt upon the victim's identification of Defendant as the perpetrator. Counsel presented evidence which conflicted with the victim's identification of Defendant. The victim's testimony shows she could not see the clothing Defendant was wearing when she identified him, thus, discrediting her identification. The victim's credibility, i.e., the validity of her description of the perpetrator wearing khaki shorts, as well as her identification of Defendant, was placed into doubt. Counsel's questioning achieved the very same objective as impeachment, that is demonstrating the victim was not trustworthy. See Ellis [v. State, 622 So. 2d 991, 996 n.3 (Fla. 1993)]. Therefore, this court finds there exists no reasonable probability that, had counsel questioned the victim as Defendant now suggests, the outcome of his trial would have been different, particularly in light of the victim's testimony that the color of Defendant's shorts did not factor into her identification of him as the perpetrator. Defendant has failed to establish the requirements of Strickland and Ground Two is denied.

Resp. Ex. 9 at 23 (record citations omitted). The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. 12.

To the extent that the First DCA affirmed the trial court's denial on the merits,[9] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable

---

[9] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

determination of the facts in light of the evidence presented in the state court proceedings.

Nevertheless, even if the state court's adjudication is not entitled to deference, this claim is still without merit. At trial, trial counsel presented testimony from Hodge's brother that Hodge was wearing black tennis shoes and black shorts on the day of the offense. Resp. Ex. 3 at 175-76. He further testified that Hodge had brown hair on the day of the incident. Id. Hodge's brother did not remember what color shirt Hodge was wearing. Id. at 178. The victim, on the other hand, testified that she remembered telling police that the suspect had on large khaki shorts, but did not remember if she said that the shorts were beige colored khaki shorts. Id. at 118. Specifically, the victim testified that the suspect's shorts "could have been beige, they could have been gray, they could have been green." Id. at 131-34. She further testified that she told police that the suspect had blond hair and was wearing white tennis shoes with a white t-shirt. Id. at 117-18. Because the victim could not remember how she initially described the color of Hodge's shorts to police, the victim did not make an inconsistent statement on which she could have been impeached. Further, there is no evidence that the victim's trial testimony regarding to color of the suspect's tennis shoes, shirt, and hair was inconsistent with her pretrial description. As such, the Court finds that counsel was not ineffective for failing to impeach the victim with this evidence. This claim is denied.

*iii. Sub-Claim C*

Hodge asserts that trial counsel was ineffective for failing to present exculpatory evidence at trial. Doc. 9 at 5-6. According to Hodge, trial counsel failed to present the clothing and shoes that Hodge was wearing at the time of his arrest, and for failing to present the DVD recording of Hodge's interrogation. Id. Hodge contends that this evidence would have supported his brother's trial testimony about what Hodge was wearing the day of the crime, and would have questioned the victim's identification of Hodge as the perpetrator. Id.

Hodge raised this claim in his Rule 3.850 motion. Resp. Ex. 9 at 8-9. The trial court summarily denied this claim, finding in pertinent part:

> As discussed supra denying Ground Two, the record reveals counsel did present the very evidence which Defendant now contends counsel did not, through the testimony of his brother, Mr. Ryan Hodge. Accordingly, for the reasons denying Ground Two, and because counsel did take the action which Defendant now alleges counsel did not, Defendant has failed to establish counsel rendered deficient performance as required by Strickland. Ground Three is denied.

Resp. Ex. 9 at 24. The First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. 12.

To the extent that the First DCA affirmed the trial court's denial on the merits,[10] the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications. After a review of the record and

---

[10] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

Even if the state court's adjudication is not entitled to deference, this claim is still without merit because Hodge cannot demonstrate prejudice. As iterated above, the victim could not remember how she initially described the color of the suspect's shorts, so the admission of the shorts as an exhibit would merely bolster Hodge's brother's testimony that the shorts were black. Further, Hodge's spontaneous incriminating statement to Officer Freeman is dispositive of this issue. Hodge essentially confessed to committing the attempted carjacking. As such, considering this sufficient evidence of guilt, Hodge cannot show that but for counsel's alleged error, the outcome of trial would have been different. As such, Hodge is not entitled to relief on this claim.

### iv. Sub-Claim D

Hodge avers that his trial counsel was ineffective for failing to object to an improper and misleading jury instruction for attempted carjacking. Doc. 9 at 6. In support of this contention, Hodge maintains that the instruction used deviated from the standard jury instruction, and that attempted carjacking "is a lesser included offense and not an actual crime . . . ." Id. According to Hodge, "since the jury instructions were confusing to the state attorney and the trial court, then certainly

this would have been confusing to juror members who are not affiliated or familiar to the law, which would be improper." Id.

Hodge raised this issue in his Rule 3.850 motion in state court. Resp. Ex. 9 at 9-11. The trial court summarily denied the claim. Id. at 24-25. Specifically, the trial court made the following findings.

> Initially, the Court notes the Florida Supreme Court had held that "'trial counsel's failure to object to standard jury instructions that have not been invalidated by this Court does not render counsel's performance deficient.'" Rodriguez v. State, 919 So. 2d 1252, 1272 (Fla. 2005) (quoting Thompson v. State, 759 So. 2d 650, 665 (Fla. 2000)).
>
> Foremost, this Court's research finds there exists no standard criminal jury instruction in Florida for the crime of Attempted Carjacking. Indeed, the transcription of the charge conference during trial demonstrates the parties thoughtfully deliberated in putting together the instruction for Attempted Carjacking. The record indicates that, in forming the instruction at issue, since there existed no standard instruction for the offense, the parties combined the standard jury instruction for attempt and the standard jury instruction for carjacking. [S]ee Fla. Std. Crim. Jury Instr. 5.1 15.2 (2008) (standard jury instruction for offense of carjacking); Fla. Std. Crim. Instr. 5.1 (1989) (standard instruction for attempt to commit a crime). That is, the instruction which the jury received is compiled of two standard jury instructions, neither which have been invalidated by the Florida Supreme Court. [S]ee id. Therefore, this Court finds counsel was not ineffective for failing to object to two instructions which comported with the respective Florida Supreme Court standard jury instructions. See Rodriguez, 919 So. 2d at 1272.
>
> Additionally, this Court finds Defendant has failed to establish that the instructions, as given, were misleading and contributed to the jury's verdict. Indeed, he has set forth purely speculative allegations, without any case law or factual support, that because the trial judge expressed hesitation with the instructions, counsel must have been

> ineffective for agreeing to them. See <u>Davis v. State</u>, 736 So.
> 2d 1156, 1159 (Fla. 1999) (holding postconviction relief not
> warranted on basis of "tenuous speculation"). Accordingly,
> Defendant has failed to establish the requirements of
> <u>Strickland</u> and Ground Four is denied.

Resp. Ex. 9 at 24-25 (record citations omitted). The First DCA <u>per curiam</u> affirmed the

trial court's denial without a written opinion. Resp. Ex. 12.

To the extent that the First DCA affirmed the trial court's denial on the

merits,[11] the Court will address the claim in accordance with the deferential standard

for federal court review of state court adjudications. After a review of the record and

the applicable law, the Court concludes that the state court's adjudication of the claim

was not contrary to clearly established federal law, did not involve an unreasonable

application of clearly established federal law, and was not based on an unreasonable

determination of the facts in light of the evidence presented in the state court

proceedings.

Nevertheless, even if the state court's adjudication is not entitled to deference,

this claim is without merit. "An error in instructing the jury cannot constitute a basis

for habeas relief unless the error so infected the entire trial that the resulting

conviction violates due process." <u>Jacobs v. Singletary</u>, 952 F.2d 1282, 1290 (11th Cir.

1992) (quotation omitted). Here, the state charged Hodge with attempted carjacking

contrary to sections 812.133(2)(b), 777.04(1), Florida Statutes (2011). Resp. Ex. 1 at 8.

As the state court noted, Florida does not have a standard jury instruction for

---

[11] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," the Court presumed that the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

attempted carjacking; however, Florida does have a standard jury instruction for attempt and a standard instruction for carjacking. <u>See</u> Fla. Std. Crim. Jury Instr. 15.2 (2008) (standard jury instruction for offense of carjacking); Fla. Std. Crim. Instr. 5.1 (1989) (standard instruction for attempt to commit a crime). Florida's standard jury instruction for attempt provides in pertinent part:

> In order to prove that the defendant attempted to commit the crime of (**crime attempted**), the State must prove the following beyond a reasonable doubt:
>
> 1. (Defendant) did some act toward committing the crime of (**crime attempted**) that went beyond just thinking or talking about it.
>
> 2. [He] [She] would have committed the crime except that
>
> a. someone prevented [him] [her] from committing the crime of (**crime attempted**).
>
> [or]
>
> b. [he] [she] failed.
>
> The crime of (**crime attempted**) is defined as (**<u>insert elements of crime attempted</u>**).

Fla. Std. Crim. Jury Instr. 5.1 (emphasis added).

In this case, during the charge conference, the parties agreed to combine the standard instruction for attempt and the standard instruction for carjacking. Resp. Ex. 3 at 168-69. In doing so, the parties followed Florida's Standard Criminal Jury Instruction 5.1 and listed the elements of carjacking after detailing the elements of attempt. Resp. Ex. 1 at 27. Further, to reduce potential confusion, the trial court gave the parties an opportunity to explain the combined instruction during their closing

arguments. Resp. Ex. 3 at 169. Indeed, after explaining the two elements of attempt, the state noted that the jury would need to know the elements of carjacking to determine if Hodge did some act toward commission of the carjacking. Id. at 182-83. Thereafter, the jury found Hodge guilty of attempted carjacking. Resp. Ex. 1 at 24. As mentioned above, the evidence presented at trial was sufficient to support the jury's verdict. As such, the Court finds that Hodge has failed to demonstrate that this alleged error "infected the entire trial" so as to result in a due process violation. See Jacobs, 952 F.2d at 1290. Counsel's performance was not deficient. Likewise, Hodge has failed to satisfy the prejudice prong of Strickland. This claim is denied.

   *v. Sub-Claim E*

   Hodge maintains that the cumulative effect of trial counsel's ineffectiveness, as outlined in Sub-Claims A-D, deprived him of a fair trial. Doc. 9 at 6. Hodge raised this claim in his Rule 3.850 motion. Resp. Ex. 9 at 12. In addressing this issue, the trial court ruled as follows:

> It is well-settled that a claim of cumulative error cannot stand in cases where, following individual evaluation, alleged errors are found to be without merit or procedurally barred. Lukehart v. State, 70 So. 3d 503, 524 (Fla. 2011); see Suggs v. State, 923 So. 2d 419, 442 (Fla. 2005) (holding that when a defendant does not successfully prove any of his individual claims and, consequently, counsel's performance is deemed sufficient, a claim of cumulative error must fail.); Parker v. State, 904 So. 2d 370, 380 (Fla. 2005) ("Because the alleged individual errors are without merit, the contention of cumulative error is similarly without merit."). Here, Defendant has not demonstrated that counsel was ineffective under either prong of Strickland for refraining from taking any of the actions Defendant references supra. This argument is, therefore, denied.

Resp. Ex. 9 at 25-26. The First DCA affirmed per curiam without a written opinion. Resp. Ex. 12. To the extent the First DCA affirmed the circuit court's denial on the merits, the Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[12] In doing so, and after review of the record and the applicable law, the Court concludes that the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Thus, Hodge is not entitled to relief on the basis of this claim.

Nevertheless, in the event the state court's adjudication is not entitled to deference, this claim is without merit. "The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). The Eleventh Circuit Court of Appeals address "claims of cumulative error by first considering the validity of each claim individually, and then examining any errors that [it] find[s] in the aggregate and in light of the trial as a whole to determine whether the appellant was afforded a fundamentally fair trial." Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012). Because

---

[12] This Court presumes that the appellate court "adopted the same reasoning" as the post-conviction court. Wilson, 138 S. Ct. at 1192.

the Court has determined that none of Hodge's individual claims of error or prejudice have merit, Hodge's cumulative error claim cannot stand. See United States v. Taylor, 417 F.3d 1176, 1182 (11th Cir. 2005) ("[There being] no error in any of the district court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). Thus, Hodge's claim for relief is denied.

*vi. Sub-Claim F*

Hodge asserts that the trial court's oral pronouncement of his sentence conflicts with his written judgement and sentence. Doc. 9 at 6. Specifically, Hodge contends that the trial court failed to orally pronounce his Prison Releasee Reoffender designation and sentence; thus, Hodge avers that the trial court is required to strike the designation and sentence him to the lowest permissible sentence per his criminal punishment scoresheet. Id.

Hodge raised this claim in his Rule 3.850 motion. Resp. Ex. 9 at 12-13. The trial court initially found that the instant claim was not cognizable in a Rule 3.850 motion. Id. at 26. However, the trial court nonetheless found the claim to be without merit. Id. Specifically, the trial court reasoned:

> Upon review of the relevant documents, this Court finds there exists no conflict between Defendant's written judgment and sentence and the trial judge's oral imposition of sentence. The trial judge imposed the very same sentence upon Defendant both orally and in writing. During the sentencing hearing, the judge orally pronounced Defendant's fifteen-year minimum mandatory sentence "under the law" and found that Defendant "is a repeat offender" after accepting two previous judgments submitted by the state in support of PRR sentencing. Therefore,

despite his instant contentions, Defendant was legally sentenced as a PRR and his oral and written sentences do not conflict. See Williams v. State, 129 So. 3d 453, 455 (Fla. 2d DCA 2014). He is not entitled to relief because his claim is without merit. Ground Six is denied.

Resp. Ex. 9 at 26-11. Respondents assert that Hodge's failure to brief this claim when he appealed the trial court's order denying his Rule 3.850 motion renders this issue unexhausted. Resp. at 64-66; Resp. Ex. 10. Respondents further note that Hodge raises this claim in a Florida Rule of Criminal Procedure 3.800(a) motion to correct illegal sentence that is currently pending in state court. Id. at 66. Respondents argue that while this situation renders this Petition as a mixed petition, this claim is otherwise not cognizable on federal habeas review because it is a pure question of state law. Id. at 66-67.

Federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures. See Branan v. Booth, 861 F.2d 1507 (11th Cir.1988); Carrizales v. Wainwright, 699 F.2d 1053 (11th Cir.1983); Jones v. Estelle, 622 F.2d 124 (5th Cir. 1980); Willeford v. Estelle, 538 F.2d 1194 (5th Cir.1976). This applies even when such a claim is couched in terms of equal protection and due process. See Branan, 861 F.2d at 1508. Federal habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991) (citations omitted). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id. at 67-68. As such, federal courts may not review claims based exclusively on state law issues. Branan, 861 F.2d at 1508 (quotation omitted).

Even assuming Hodge's failure to brief this issue during his postconviction appeal renders this issue unexhausted, the Court agrees with Respondents that Hodge's claim is not cognizable on federal habeas review because it is based on perceived errors of state law. See Watts v. Sec'y Dept. of Corr., No. 3:14-cv-558-J-39MCR, 2017 WL 2021701, at *16-*17 (M.D. Fla. May 12, 2017); Grove v. Sec'y Dept. of Corr., No. 8:08-cv-1673-T-17MAP, 2009 WL 179626, at *7 (M.D. Fla. Jan. 26, 2009). When an oral sentence conflicts with the written sentence, the oral sentence controls. See Hill v. United States ex rel. Wampler, 298 U.S. 460 (1936). "However, there is no Supreme Court precedent deciding the specific circumstances under which a state court may determine the written judgment is in harmony with the oral pronouncement." Grove, No. 8:08-CV-1673-T17MAP, 2009 WL 179626, at *8. Here, the state court's finding that Hodge's written judgement and sentence does not conflict with the sentencing court's oral pronouncement is objectively reasonable. The sentencing court's intent to sentence Hodge as a PRR is evident from the sentencing transcript. Resp. Ex. 9 at 86-87. Accordingly, Hodge is not entitled to habeas relief on this claim.

   *vii. Sub-Claim G*

   Hodge maintains that the trial court erred in not allowing him to amend his Rule 3.850 motion to allow him to sufficiently allege his claims for relief. Doc. 9 at 7. Specifically, Hodge asserts that the trial court failed to allow him to amend ground four of his Rule 3.850 motion, so he could properly allege that trial counsel failed to object to an erroneous jury instruction on attempted carjacking. Id. Hodge alleges that

the trial court denied this issue because he did not have factual or legal support; thus, the trial court should have allowed him to amend the claim. Id.

Respondents contend that Hodge failed to exhaust this claim because he never raised it in state court. Resp. at 68-69. Respondents further maintain that even if this claim was exhausted, it is not cognizable on federal habeas review. Id. at 69.

The Eleventh Circuit has repeatedly held that alleged defects in a collateral proceeding do not state a basis for federal habeas relief.

> Federal habeas relief is available to remedy defects in a defendant's conviction and sentence, but "an alleged defect in a collateral proceeding does not state a basis for habeas relief." Quince v. Crosby, 360 F.3d 1259, 1262 (11th Cir.2004); see also Carroll v. Sec'y, DOC, 574 F.3d 1354, 1365 (11th Cir.2009). There is a valid reason behind this principle: "[A] challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment—i.e., the conviction itself—and thus habeas relief is not an appropriate remedy." Carroll, 574 F.3d at 1365. Furthermore, such challenges often involve issues of state law, and "[a] state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir.1992).

Alston v. Dep't of Corr., Fla., 610 F.3d 1318, 1325–26 (11th Cir. 2010). Hodge's challenge does not attack the validity of the fact or length of his confinement. His claim concerns a state matter as Florida provides for postconviction procedures through its state statutes. These collateral proceedings are a state created right. Thus, the state court's alleged failure to give Hodge leave to amend his claim concerns postconviction procedures rather than the legality of Hodge's detention. Accordingly, Hodge's

challenge to the state postconviction proceedings does not provide a basis for federal habeas relief.

Nevertheless, even if this claim was cognizable on federal habeas review, it is still without merit. Here, while the trial court found that Hodge's claim was speculative and without legal or factual support, it primarily disposed of this issue on the merits. Resp. Ex. 9 at 24-25. Notably, the trial court found that the instruction did not run afoul of the standard criminal jury instructions, and thus, trial counsel was not ineffective for failing to object. Id. at 25. The First DCA per curiam affirmed the trial court's finding without a written opinion. Resp. Ex. 12. Because the state court found that Hodge's claim lacked merit despite its insufficiency, Hodge cannot show that the outcome of the postconviction proceedings would have been different had the trial court allowed him to amend his Rule 3.850 motion. This claim is denied.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Amended Petition (Doc. 9) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.     If Hodge appeals the denial of the Amended Petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions

report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[13]

      **DONE AND ORDERED** at Jacksonville, Florida, this 26th day of November, 2018.


TIMOTHY J. CORRIGAN
United States District Judge


Jax-7

C:     Kevin Hodge, #131962
       Bryan G. Jordan, Esq.

---

[13] The Court should issue a certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.